UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------X

In re:                                                              Case No. 26-10541-lgb

JMJ FILMS, INC.,                                                    Chapter 11

                    Debtor.

-----------------------------------------------------------X

### DECISION REGARDING HOLCOMBE'S MOTION TO DISMISS PURSUANT TO SECTION 1112(B), ENJOINING ALL PARTIES FROM FUTURE FILING PURSUANT TO SECTION 105(A) OR, IN THE ALTERNATIVE, TO EXCUSE THE RECEIVER PURSUANT TO SECTION 543(D) AND FOR RELATED RELIEF

A motion was filed by Gregory F. Holcombe to dismiss the JMJ Films, Inc. ("JMJ" or the "Debtor") Chapter 11 case and the Joy-CPW, Inc. ("Joy-CPW") Chapter 11 case pursuant to section 1112(b), enjoining all parties from future filing pursuant to section 105(a) or, in the alternative, to excuse the receiver pursuant to section 543(d) and for related relief (the "Motion") [ECF No. 15].  Attached to the Motion was a certification by Douglas T. Tabachnik with exhibits (the "Tabachnik Certification"), a certification by Hernan Serrano, the state court-appointed receiver (the "Receiver"), with exhibits (the "Serrano Certification"), and a supporting memorandum of law.

JMJ and Joy-CPW filed an opposition to the Motion (the "Opposition") [ECF No. 26].  The Opposition included a certification of James Moskovitz (the "Moskovitz Certification"). Thereafter, Mr. Holcombe filed a reply pleading in support of the Motion (the "Reply") [ECF No. 28].

The Court held an initial hearing on the Motion on April 15, 2026.  At the initial hearing, the Court dismissed the Joy-CPW Chapter 11 case and, separately, ordered that an evidentiary hearing take place on May 19, 2026 regarding the relief sought against the Debtor in the Motion [ECF No. 31].

On May 7, 2026, the Office of the United States Trustee (the "U.S. Trustee") filed a motion directing the appointment of a Chapter 11 trustee (the "Motion to Appoint a Chapter 11 Trustee")[1] [ECF No. 33] and a motion to shorten the applicable notice period for a hearing thereon [ECF No. 25], the latter of which was opposed by the Debtor [ECF No. 36]. The Court granted the motion to shorten notice [ECF No. 37], scheduling the hearing on the Motion to Appoint a Chapter 11 Trustee for May 19, 2026.

---

[1] The U.S. Trustee expressly took no position with respect to the Motion in the Motion to Appoint a Chapter 11 Trustee.

1

The Receiver filed an objection to the Motion to Appoint a Chapter 11 Trustee [ECF No. 45], as did the Debtor [ECF No. 46]. The Debtor also filed a limited objection to the Receiver's objection to the Motion to Appoint a Chapter 11 Trustee [ECF No. 48].

In further support of the Opposition, the Debtor filed a Certification of Sharli Hosman on May 14, 2026 [ECF No. 42].

The Court held an evidentiary hearing on May 19, 2026 at which hearing the Receiver, Mr. James Moskovitz and Ms. Sharli Hosman testified and were subject to cross-examination. The evidentiary hearing was continued on June 23, 2026, where Mr. Moskovitz gave further testimony based on his supplemental declaration filed with the Court after his initial testimony (the "Supplemental Declaration") [ECF No. 61]. Mr. Holcombe filed a response to the Supplemental Declaration (the "Response") [ECF No. 63].

The Court has considered all of the related pleadings, the exhibits admitted into evidence at the evidentiary hearing and the testimony of the witnesses, and has reviewed the transcripts of the evidentiary hearing [ECF Nos. 57, 68]. The Court also takes judicial notice of the Debtor's Schedules, Amended Schedules [ECF Nos. 1, 14, 44] and monthly operating reports for March through May [ECF Nos. 69-71].

Mr. Holcombe seeks dismissal of the Chapter 11 case on two grounds: (i) the filing was in bad faith and (ii) the Debtor's failure to comply with court-ordered discovery and its belligerence to the Receiver amounts to gross mismanagement and a willful failure to obey court orders. In the Reply, Mr. Holcombe also raised the fact that the corporate Debtor had originally filed *pro se* as further support for the argument that the Debtor had filed in bad faith. The Debtor opposes dismissal of the Chapter 11 case, arguing, under section 1112(b)(2), that dismissal would not be in the best interests of the estate or its creditors because his unique experience presents unusual circumstances in this case.

The Debtor's assets are the *Game Time with Boomer Esiason* show (the "Show") and related intellectual property and assets, including the production contract for the Show. *See* ECF No. 14, Schedules A/B, G. According to Mr. Moskovitz, the production contract - which is in the name of Joy-CPW - was assigned to the Debtor in February 2025. Holcombe Exs. M, N; Supp. Decl. Ex. J. While there are emails from various professionals who represent Mr. Esiason, specifically Messrs. Rosner and Kreidman, evidencing consent of those persons of the change from Joy-CPW to the Debtor as the party obligated to the contract, the evidentiary record does not contain a signed amendment to the production contract whereby Fawny Corp. ("Fawny"), Mr. Esiason's corporate entity and the counterparty to the production contract, consents in writing to the contract's assignment from Joy-CPW to the Debtor. Sections 12.4 and 12.6 of the production contract explicitly require that any assignment thereof by Joy-CPW, or any modification thereto that would affect Fawny's rights thereunder, be pursuant to a writing in a form agreed to by Fawny. There are no documents admitted into evidence that demonstrate that these provisions of the production contract were complied with by Joy-CPW. Additionally absent from the record is

2

a written assignment agreement signed by Joy-CPW assigning its rights under the production contract to the Debtor.

At the time that the alleged assignment was made by Joy-CPW,[2] Mrs. Joyce Moskovitz, Director and fifty percent owner of Joy-CPW, had filed under Chapter 11 before this Court. *See generally* Case No. 24-10440. Mrs. Moskovitz's shares in Joy-CPW are an asset of her bankruptcy estate. *See id.*, ECF 1, Schedule A/B. On May 2, 2025, Mrs. Moskovitz filed a proposed plan of reorganization in her Chapter 11 case, which provides for a payment of $10,000 per month from Joy-CPW to Mrs. Moskovitz based on projections for Joy-CPW which were prepared by Mr. Moskovitz. *See* Response Ex. B; 6.26 Tr. 59:1-11. Both Mrs. Moskovitz and Mr. Moskovitz were aware of the alleged transfer of the production contract from Joy-CPW to the Debtor in February 2025 because they attended the board meeting and then signed the minutes. The Court questions how Mrs. Moskovitz could have signed the plan and the accompanying disclosure statement while knowing that she had authorized the transfer of the production contract to the Debtor three months prior, and thus, the proposed projections were unachievable. Mrs. Moskovitz did not notify the Court, let alone seek its approval, before consenting to the transfer of the production contract. Furthermore, there was no third-party valuation of the production contract obtained at the time of the alleged assignment, and only certain of Joy-CPW's debts were assumed by the Debtor, so it is not clear whether fair or reasonably equivalent value was paid for the production contract's transfer. The Court notes that Ms. Moskovitz still has several unpaid creditors, including Mr. Holcombe and the Small Business Administration, as did Joy-CPW as-of the date the Court dismissed its Chapter 11 case.

There is no evidence that the Debtor paid anything to Joy-CPW for its rights under the production contract at the time of assignment (or any time thereafter). The Debtor has few unsecured creditors and Mr. Holcombe's claim is the largest by far. One of the Debtor's potential assets, the production contract, is not subject to a foreclosure action, but is subject to a fraudulent transfer action currently pending in state court.

The Debtor lists the value of the production contract and Show-related intellectual property at $10 million. ECF No. 14 Schedule A/B. If those assets are worth $10 million, then Joy-CPW may have a substantial claim against such assets. The evidentiary record seems clear: the production contract does not appear to have been assigned to the Debtor in accordance with its terms. Thus, the Debtor could be required to return the asset to Joy-CPW or make payments to Joy-CPW for improperly using its rights under the production contract. Even if the transfer of the production contract is determined to have validly occurred, the state court might find that the transfer was fraudulent and require the Debtor to pay fair value for the asset to Joy-CPW or assume and pay all of the debts of Joy-CPW. However, none of these possible outcomes have occurred to date.

---

[2] As set forth in the signed minutes of a Board meeting for Joy-CPW on February 8, 2025.

3

In light of the alleged transfer of the production contract, the state court appointed the Receiver over both Joy-CPW and the Debtor and authorized the Receiver to take steps to collect the assets and pay all creditors of those entities.  Based on the Schedules filed by the Debtor, the estate's issues arise almost entirely from the two-party dispute over the judgment held by Mr. Holcombe on one hand and Joy-CPW and the Debtor on the other.  The Court believes that this dispute can be resolved in the pending state court action.

Mr. Moskovitz testified that the Debtor's bankruptcy case was filed in order to repay Mr. Holcombe.  6.26 Tr. 1-8, 147:19-25.  Based on the Schedules, the monthly operating reports and Mr. Moskovitz 's testimony, the Debtor and Joy-CPW do not have sufficient cash on hand to pay Mr. Holcombe's debt in full, nor could the Debtor pay Joy-CPW for the transferred assets.  There is no question that the timing of the filing clearly evidences the intention of the Debtor and Joy-CPW (and Mr. Moskovitz) to delay Mr. Holcombe's collection on his judgment through the Receiver, and to frustrate the Receiver in the execution of his duties.  The Receiver's testimony also demonstrates, as does Mr. Moskovitz' testimony at the 341 meeting that, pre-petition but after the appointment of the Receiver, Mr. Moskovitz deposited cash generated from the Debtor's business in his personal bank account instead of the business account under the control of the Receiver.  Serrano Cert. ¶ 23; Holcombe Ex. Q 43:4-15; Supp. Decl. Ex. D.

In the Second Circuit, the standard for a filing in bad faith is set forth in *In re C-TC 9th Avenue Partnership*, 113 F.3d 1304 (2d Cir. 1997), wherein the Court cited to the factors relied upon in *Pleasant Pointe Apartments, Ltd. v. Kentucky Housing Corporation*, 139 B.R. 828 (W.D. Ky. 1992).  The factors are (1) the debtor has only one asset, (2) the debtor has few unsecured creditors whose claims are small in relations to those of the secured creditors, (3) the debtor's one asset is the subject of a foreclosure action as a result of arrearages or default on the debt, (4) the debtor's financial condition is essentially a two party dispute between the debtor and secured creditors which can be resolved in the pending state foreclosure action, (5) the timing of the debtor's filing evidences an intent to delay or frustrate the legitimate efforts of the debtor's secured creditors to enforce their rights, (6) the debtor has little (or no) cash flow, (7) the debtor cannot meet current expenses including the payment of personal property and real estate taxes, and (8) the debtor has no employees.

Under the case law, Mr. Holcombe does not have to satisfy all of these factors for the Court to determine that this case was filed in bad faith.  Certain of the *C-TC* factors apply based on the evidence presented in each case.  In addition to the *C-TC* factors, the Court must consider whether the Petition serves a valid bankruptcy purpose and whether it was filed merely to obtain a tactical litigation advantage.  The evidence before the Court shows that both the Debtor's and Joy-CPW's Chapter 11 cases were filed to stay the fraudulent conveyance action in the state court, to dispossess the Receiver and enable Mr. Moskovitz to regain control of the Debtor's business, and to delay or defer payment to Joy-CPW's creditors and the Debtor's creditors, particularly Mr. Holcombe.  Moskovitz Cert., ¶ 48; Holcombe Ex. Q 25:7-23, 26:1, 33:14-22.

In opposition to the Motion, Mr. Moskovitz has provided projections for the Debtor's business.  Supp. Decl. Ex. A.  The projections might be achievable.  There are signed advertising contracts with some - but not all - of the sources of revenue included in the projections.  Supp. Decl. Exs. K, L, M, O.  The Debtor provided an income statement for an eleven-month period from April 2025 through February 2025 showing a total net income of $54,020.35. Supp. Decl. Ex. B.  Although past performance does not always guarantee future results, it cannot be said that the Debtor's recent history supports the notion that its projections are achievable.

However, certain of the Debtor's business opportunities may increase the success of its operations.  For instance, the advertising contract involving the Lake Erie College of Medicine commenced in February 2026 and may be extended for years thereafter.  Supp. Decl. Exs. L and M.  The evidence presented by the Debtor, including the Exhibits attached to the Supplemental Declaration, demonstrates that it is, at the very least, possible that the Debtor might be able to collect the projected revenue from advertisers.

Additionally, there is *no question* that Mr. Moskovitz is quite talented as a creator and producer of sport shows.  The evidence shows that the sports shows created and produced by Joy-CPW and Mr. Moskovitz have earned numerous accolades and awards.  See Moskovitz Decl. ¶¶1-9,  Ex. A.

There are no good choices for this Court.  It could grant the Motion, which means that the Receiver will continue to oversee the Debtor's business.  Although the Receiver is not trying to supplant Mr. Moskovitz' operational role, Mr. Moskovitz appears to be unwilling to work with the Receiver.  The Receiver does not have the ability to successfully produce episodes of the Show without the assistance of Mr. Moskovitz or someone with similar experience directing quality sports shows.  However, since the Receiver is still in place, Mr. Moskovitz should be complying with the state court order. This requires that Mr. Moskovitz consult with the Receiver before Mr. Moskovitz enters into any significant contracts on behalf of the Debtor, that the Receiver should sign off on any significant cash disbursements before payment and that the Receiver should have access to all bank accounts and accounting information of the Debtor on a real-time current basis.  The Receiver does not have such access and information, nor has Mr. Moskovitz made sufficient effort to work with the Receiver. 6.26 Tr. 142:17-21.  So, if the Motion is granted, Mr. Moskovitz and the Receiver may continue to work at cross-purposes and the Debtor's operations may be adversely impacted or cease.

On the other hand, if this Court were to deny the Motion, it would then have to consider the Motion to Appoint a Chapter 11 Trustee.  The Court will not speculate on what it would do with respect to such motion.  But, even if the Court were to grant the Motion to Appoint a Chapter 11 Trustee, the Court would have the same concerns as with the Receiver.  The Court does not believe that it would be possible for a court-appointed trustee to successfully operate the Debtor's business without the cooperation of Mr. Moskovitz or retention of someone with Mr. Moskovitz's experience producing quality sports shows.  Where the founder and long-time

operator of a business finds themselves displaced by a court-appointed trustee, there is some plausible chance that the business may end up in liquidation. In essence, a Chapter 11 trustee displaces the board of directors for the debtor and oversees the management of the debtor's business, including the debtor's employees. In this case, a Chapter 11 trustee's authority over the Debtor and its operations would certainly exceed that of the Receiver's. Having observed Mr. Moskovitz's demeanor in Court and listened to his testimony, the Court doubts that Mr. Moskovitz would be more cooperative with a Chapter 11 trustee than he has been with the Receiver.

A third option: the Court could deny both the Motion and the Motion to Appoint a Chapter 11 Trustee and allow Mr. Moskovitz to continue to operate the business in bankruptcy. Although this course of action could plausibly be least disruptive to the continuity of the Show, the Court does not feel that it can ignore all prior actions taken by Mr. Moskovitz, who solely owns the Debtor and commands its operations. *First*, it is unclear whether Mr. Moskovitz was entitled to the $2.9 million that he received from the previous sale of the Show's archives by Joy-CPW to Raycom Sports. His testimony is that he was entitled to those proceeds because he owned the tapes. 5.19 Tr. 114:5-15, 119:2-10. *Second*, it is unclear when the transfer of the shares that he currently owns in Joy-CPW occurred and whether the transfer is avoidable as a fraudulent transfer. 5.19 Tr. 143:1-12, 23-25. *Third*, Mr. Holcombe's loan to Joy-CPW was guaranteed by both Mr. and Mrs. Moskovitz and the money was not timely repaid, resulting in a judgment in favor of Mr. Holcombe. Two years have passed since the judgment was obtained and neither Mr. nor Mrs. Moskovitz have paid the judgment debt to Mr. Holcombe, nor has Joy-CPW. To aid in collection, Mr. Holcombe was forced to seek and obtain the appointment of the Receiver from the state court. Tabachnik Cert. Ex. F. The Debtor's bank account was frozen in September 2025. 5.19 Tr. 181:18-19. While Mr. Moskovitz has provided the Receiver with certain limited information about the Debtor and its operations, he has not provided the Receiver with sufficient access to the Debtor's business and finances. 6.26 Tr. 142:17-19. *Fourth*, Mr. Moskovitz approved the transfer of the production contract and the production of the Show to the Debtor in exchange for assuming the obligations of Joy-CPW under the production contract and bearing the costs of producing the Show on a go forward basis. Supp. Decl. Ex. I. No outside valuation was obtained for the production contract. No money was paid by the Debtor to Joy-CPW for relinquishing its rights under the production contract. There is a fraudulent transfer action pending in the state court. Tabachnik Decl. Ex. E. *Fifth*, Mr. Moskovitz operated the Debtor's business through the Moskovitz' personal bank account for a number of months from September 2025 until the debtor-in -possession account was opened post-filing on May 18, 2026. Supp. Decl. ¶ 8, Ex. D. *Sixth*, Mr. Moskovitz filed petitions with the Court for Joy-CPW and the Debtor without retaining counsel on March 13, 2026. Additionally, the Chapter 7 trustee, Salvatore LaMonica, was not consulted prior to the filing of the petition for Joy-CPW. The trustee controls fifty percent of the shares of Joy-CPW, so there was no legal authority for Joy-CPW's Chapter 11 filing. *Seventh*, the Debtor did not timely file several of its monthly operating reports, which is grounds for dismissal in-and-of itself. *Eighth*, Mr. and Mrs. Moskovitz and

Joy-CPW have failed for more than two years to repay the debt that they owe to Mr. Holcombe. While there is a chance that the Debtor will be able to repay the debt to Mr. Holcombe through a potential factoring arrangement or proposed restructuring plan, based on the Debtor's recent past performance, it is not a certainty.

Ultimately, the Court must determine which of these three options will best serve the interests of the Debtor's creditors. The Debtor's creditors, who are listed as disputed in the Schedules, are Mr. Holcombe and another litigant. ECF Nos. 1, 14, 44. Three other creditors have filed proofs of claim in the bankruptcy case. *See* Claims Register.

The Debtor also seeks relief under section 1112(b)(2), averring that unusual circumstances are present because Mr. Moskovitz is vital to the production of the Show and the Debtor's operations. While the Court readily acknowledges that Mr. Moskovitz is highly important to the Debtor's business, the Court still finds that dismissing the case is in the best interest of the Debtor's creditors and estate and that unusual circumstances do not exist. Upon the Court's dismissal of this case, the Receiver will continue overseeing the Show's business operations and will attempt to realize sufficient value to pay the creditors of both the Debtor and Joy-CPW.

Accordingly, the Court finds that the Debtor's bankruptcy filing was in bad faith, that section 1112(b)(2) does not apply, and the Chapter 11 case will be dismissed.

With respect to Mr. Holcombe's request for a ban for two years with respect to a subsequent bankruptcy filing by the Debtor, the Court does not believe that the evidence supports such a ban at this point in time. There have not been serial filings here, although it might seem to Mr. Holcombe like he is playing Whac-a-Mole™ at times. The case law regarding section 349 in this District generally requires serial filings or similar behavior, and Section 109(g) does not apply to a corporate debtor. While the Debtor's pro se filing was in violation of the requirements that a corporation be represented by counsel, the Court does not find that is a basis for a two-year filing ban.

The Court requests that counsel for Mr. Holcombe submit a proposed order granting in part the relief sought in the Motion, consistent with this written Decision.

Dated: August 11, 2026

_Lisa G. Beckerman_
The Honorable Lisa G. Beckerman
United States Bankruptcy Judge

7